**UNITED STATES COURT OF INTERNATIONAL TRADE**

| | |
|---|---|
| **JING MEI AUTOMOTIVE (USA), INC.,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**UNITED STATES, U.S. CUSTOMS AND BORDER PROTECTION, and RODNEY S. SCOTT, in his official capacity as Commissioner of U.S. Customs and Border Protection,**<br><br>**Defendants.** | **Case No.: 1:26-cv-5297** |

**COMPLAINT**

Plaintiff Jing Mei Automotive (USA), Inc. ("JMA" or "Plaintiff"), by and through its undersigned counsel, brings this Complaint against Defendants the United States, United States Customs and Border Protection ("CBP"), and Rodney S. Scott, in his official capacity as the Commissioner of CBP (and collectively, the "Defendants") and hereby alleges as follows:

1. Plaintiff is an importer of record that paid and now challenges certain duties assessed on its merchandise that imported into the United States.

2. These duties were assessed under executive orders invoking the International Emergency Economic Powers Act ("IEEPA"), 50 U.S.C. § 1701 et seq.

3. Plaintiff now seeks recovery of those duties, together with all lawfully owed interest and other related relief.

4. Starting in February 2025, President Donald J. Trump ("President Trump"), issued a series of executive orders that invoked IEEPA to impose additional tariffs on merchandise

imported from over 100 foreign nations (collectively, the "IEEPA Tariff Orders"). The duties imposed under those IEEPA Tariff Orders are referred to herein as the "IEEPA Duties."

5. Plaintiff imported merchandise from China, one of the nations subject to the IEEPA Tariff Orders and served as the importer of record for entries on which CBP assessed and collected significant IEEPA Duties. Accordingly, as the importer of record, Plaintiff paid the IEEPA Duties assessed on those imported goods.

6. On February 20, 2026, the United States Supreme Court ("Supreme Court") held that "IEEPA does not authorize the President to impose tariffs." *Learning Res., Inc. v. Trump*, 607 U.S. 229, 255 (2026) (affirming V.*O.S. Selections, Inc. v. Trump*, 149 F.4th 1312 (Fed. Cir. 2025)).

7. The Supreme Court further confirmed that claims concerning the administration and collection of the challenged tariffs fall "within the exclusive jurisdiction of" the United States Court of International Trade. *Id.* at 255, n.1.

8. Plaintiff therefore seeks judgment requiring CBP to liquidate or reliquidate the affected entries without IEEPA Duties and requiring Defendants to fully refund all IEEPA Duties paid by Plaintiff, with all applicable interest as provided by law.

9. This separate action is necessary to protect Plaintiff's right to relief because, although the Supreme Court held that the IEEPA Tariff Orders were not authorized by IEEPA and that the IEEPA Duties were therefore unlawfully imposed, Plaintiff may not be guaranteed a refund of the unlawfully collected IEEPA Duties it has paid absent its own entry-specific relief and a judgment from this Court.

## PARTIES

10. Plaintiff JMA is an Illinois corporation with its principal place of business in Chicago, Illinois. Plaintiff imports automotive parts into the United States.

11. Plaintiff was the importer of record for entries subject to the IEEPA Duties and has paid those duties.

12. Defendant United States received the disputed duties and is a proper defendant under 5 U.S.C. § 702 and 28 U.S.C. § 1581(i).

13. Defendant U.S. Customs and Border Protection is the federal agency responsible for administering United States customs laws and assessing and collecting duties on imported merchandise. As such, CBP assessed and collected the IEEPA Duties from Plaintiff.

14. Defendant Rodney S. Scott is the Commissioner of CBP and is sued solely in his official capacity. Any successor shall be automatically substituted as provided by law.

## JURISDICTION AND STANDING

15. This Court has subject-matter jurisdiction over this action under 28 U.S.C. § 1581(i). *See Learning Res.*, 607 U.S. at 255, n.1.

16. Under 28 U.S.C. § 1585, this Court possesses the same powers at law and in equity as a United States District Court. Furthermore, this Court may enter a money judgment against the United States and award appropriate civil relief in an action under 28 U.S.C. § 1581, including declaratory judgments, injunctive relief, writs of mandamus, orders of remand, and other relief. 28 U.S.C. § 2643(a)(1), (c)(1).

17. Plaintiff has standing under 5 U.S.C. § 702 and 28 U.S.C. § 2631(i) because it is "adversely affected or aggrieved" by Defendants' assessment and collection of IEEPA Duties imposed on Plaintiff, which caused a concrete financial injury that this Court can redress.

18. This action is timely under 28 U.S.C. § 2636(i), because the challenged IEEPA Tariff Orders were issued on or after February 1, 2025, Plaintiff first paid IEEPA Duties on or after April 22, 2025, and this action is filed within two years after Plaintiff's claim accrued.

## FACTUAL ALLEGATIONS

### I. The Implementation of the IEEPA Tariffs.

19. Starting on February 1, 2025, President Trump issued executive orders imposing additional tariffs on certain imports from Mexico, Canada, and the People's Republic of China (the "Drug-Related Tariff Orders"), each invoking IEEPA as the basis for authorizing the tariffs. *See* Exec. Order No. 14194, 90 Fed. Reg. 9,117 (Feb. 7, 2025); Exec. Order No. 14193, 90 Fed. Reg. 9,113 (Feb. 7, 2025); Exec. Order No. 14195, 90 Fed. Reg. 9,121 (Feb. 7, 2025).[1]

20. Pursuant to these Drug-Related Tariff Orders, CBP began assessing additional IEEPA Duties upon Plaintiff's entries.

21. Then, on April 2, 2025, President Trump issued Executive Order No. 14257, *Regulating Imports with a Reciprocal Tariff to Rectify Trade Practices that Contribute to Large and Persistent Annual United States Goods Trade Deficits* (the "Reciprocal Tariff Order"). 90 Fed. Reg. 15,041 (Apr. 7, 2025).[2]

22. The Reciprocal Tariff Order established a 10% baseline tariff on nearly all imports into the United States, effective April 5, 2025, while also imposing additional nation-by-nation tariff rates on imports from at least 57 countries, effective April 9, 2025. *Id.*

---

[1] Exec. Order No. 14195 was subsequently modified through Exec. Order No. 14200, 90 Fed. Reg. 9,277 (Feb. 11, 2025) and Exec. Order No. 14228, 90 Fed. Reg. 11,463 (Mar. 7, 2025).

[2] President Trump subsequently amended the Reciprocal Tariff Order through Exec. Order No. 14259, 90 Fed. Reg. 15,509 (Apr. 14, 2025) and Exec. Order No. 14266, 90 Fed. Reg. 15,625 (Apr. 15, 2025).

23. The President has since issued additional executive orders invoking IEEPA to impose or modify duties on imports from other countries. Plaintiff challenges only those IEEPA Tariff Orders that applied to Plaintiff's entries and caused Plaintiff to pay IEEPA Duties.

24. Specifically, the IEEPA Tariff Orders applicable to Plaintiff include:

| Executive Order | Effective Date | Country | Duty Rate |
|---|---|---|---|
| 14195 | February 4, 2025 | China | 10% |
| 14195 amended | March 4, 2025 | China | 20% |
| 14357 | November 10, 2025 | China | 10% |
| 14257 | April 5, 2025 | China | 34% |
| 14259 | April 9, 2025 | China | 84% |
| 14266 | April 10, 2025 | China | 125% |
| 14298 | May 14, 2025 | China | 34% |

25. To implement the IEEPA Tariff Orders, Defendants caused the Harmonized Tariff Schedule of the United States ("HTSUS") to be modified and supplemented to require importers to report additional tariff classifications for covered imports under revised tariff codes associated with the challenged IEEPA Duties.

26. As a result, Plaintiff's affected entries were reported under, or assessed by reference to, the following additional HTSUS provisions: 9903.01.20, 9903.01.24, 9903.01.25, 9903.01.63, and 9903.01.28.

## II. CBP Unlawfully Assessed and Collected IEEPA Duties from Plaintiff.

27. CBP is charged with determining the amount of duty, including the IEEPA Duties, owed on imported merchandise and collecting those duties based on the tariff classifications and rates established by the HTSUS. *See* 19 U.S.C. §§ 1500 and 1502.

28. After CBP determines the final amount of duties owed, it liquidates the entry and notifies the importer of record whether additional duties are owed or if a refund for excessive duties paid is owed. 19 U.S.C. § 1500.

29. Following liquidation, when applicable, the importer of record generally has 180 days to file a protest contesting the liquidation and any other related CBP decisions or classifications. 19 U.S.C. § 1514(a), (c)(3).

30. With respect to the IEEPA Tariff Orders and related IEEPA Duties, this Court has previously recognized that it has "the explicit power to order reliquidation and refunds where the government has unlawfully exacted duties." *AGS Co. Auto. Sols. v. U.S. Customs & Border Prot.*, 813 F. Supp. 3d 1298, 1302 (Ct. Int'l Trade 2025) (quoting *In re Section 301 Cases*, 524 F. Supp. 3d 1355, 1363 (Ct. Int'l Trade 2021)).

31. The United States has also represented in various related proceedings involving the IEEPA Tariff Orders and duties paid thereunder that it would not oppose refunding estimated IEEPA Duty deposits to plaintiffs that challenge those duties and obtain a court order directing reliquidation, including of entries that have been finally liquidated. *See, e.g., Princess Awesome, LLC v. U.S. Customs & Border Prot.*, No. 25-078, ECF No. 16 at 12 n.4 (Ct. Int'l Trade May 23, 2025), ECF No. 25 (Ct. Int'l Trade July 15, 2026); *Strato Tech. Sols., LLC v. United States*, No. 25-322, ECF No. 14 at 4 (Ct. Int'l Trade Dec. 16, 2025), ECF No. 16 at 9 (Ct. Int'l Trade Dec. 22, 2025), ECF No. 20 (Ct. Int'l Trade July 17, 2026).

32. Plaintiff imported merchandise from China through the Grand Rapids, Michigan Port of Entry (#3806) and Chicago, Illinois Port of Entry (#3901) during the period March 1, 2025 through March 3, 2026. CBP then assessed IEEPA Duties on those entries, and Plaintiff promptly paid the assessed amounts.

33. As of the filing of this Complaint, Plaintiff has paid approximately $854,993.70 in IEEPA Duties on the affected entries. Of that amount, approximately $234,513.70 has been refunded, while at least $620,480.00 remains unrefunded.

34. The affected entries included 10 unliquidated entries, 40 liquidated entries within the protest period, and 14 finally liquidated entries.

35. Plaintiff has exhausted all of its available administrative remedies. Since CBP introduced and opened its Consolidated Administration and Processing of Entries portal ("CAPE"), Plaintiff has submitted all eligible entries for refunds and has received refunds on all of those entries totaling at least $234,513.70. These entries that were submitted for refund, including the entry number, entry date, liquidation date, and amount refunded are identified herewith on **Exhibit A**.

36. In addition, to preserve all arguments with respect to liquidated entries that are outside of the eligibility window for CAPE but were within the window for protests, Plaintiff filed two protests with CBP. The first protest, assigned protest #390126137751, was filed on July 29, 2026, and the second protest, assigned protest #380626100131, was filed on August 31, 2026. A true and accurate copy of the July 29, 2026 protest is attached hereto as **Exhibit B**, and a true and accurate copy of the August 31, 2026 protest is attached hereto as **Exhibit C**.

37. While CBP has not yet ruled on this protest, CBP has generally stated that it will not refund IEEPA Duties through the protest process and will not process refunds in CAPE for entries subject to active protests. *See International Emergency Economic Powers Act (IEEPA) Duty Refunds*, U.S. CUSTOMS AND BORDER PROTECTION (Oct. 28, 2026), available at https://www.cbp.gov/trade/programs-administration/trade-remedies/ieepa-duty-refunds. Plaintiff will withdraw its protest if granted relief in this action. No administrative remedies currently exist for finally liquidated entries. Plaintiff's finally liquidated and protested entries, totaling at least $620,480.00, including the relevant entry numbers, ports, dates, Form 7501 descriptions, and HTS Codes are identified herewith on **Exhibit D**.

## III. The IEEPA Tariffs Were Unlawful and Exceeded Defendants' Statutory Authority.

38. The IEEPA Tariff Orders cited IEEPA (50 U.S.C. § 1701 *et seq*.), the National Emergencies Act (50 U.S.C. § 1601 *et seq*.), Section 604 of the Trade Act of 1974, as amended, 19 U.S.C. § 2483, and 3 U.S.C. § 301 as the basis for the authority to impose tariffs.

39. However, none of the cited authorities provides a proper, lawful basis to authorize the challenged tariffs. Moreover, the IEEPA Tariff Orders relied solely on IEEPA as the source of authority to impose the challenged tariffs and resulting IEEPA Duties.

40. In *V.O.S. Selections*, this Court held that IEEPA did not authorize the challenged IEEPA Tariff Orders, and the Federal Circuit, sitting en banc, affirmed that conclusion. 149 F.4th at 1330*, aff'd sub nom*. *Learning Res., Inc. v. Trump*, 607 U.S. 229 (2026). The Supreme Court consolidated *V.O.S. Selections* and *Learning Resources*, affirming this holding and concluding that IEEPA does not authorize the President to impose the challenged tariffs. *Learning Resources*, 607 U.S. at 255.

41. Because the IEEPA Tariff Orders exceeded the authority Congress conferred on the President, the assessment and collection of IEEPA Duties from Plaintiff were contrary to law and *ultra vires*.

## IV. Plaintiff is Entitled to Entry-Specific Relief and Refunds for Payment of the IEEPA Duties.

42. Plaintiff has suffered and continues to suffer significant monetary injury from Defendants' retention of IEEPA Duties paid on Plaintiff's entries.

43. Plaintiff lacks an adequate remedy unless the Court directs appropriate treatment of the affected entries and orders repayment of the unlawfully collected IEEPA Duties, with any and all applicable interest as provided by law.

## STATEMENT OF CLAIMS

### *Count I: Unlawful and Ultra Vires Assessment and Collection of IEEPA Duties*

44. Plaintiff incorporates by reference paragraphs 1 through 43 as though fully set forth here.

45. The Supreme Court has already held in *Learning Resources* that "IEEPA does not authorize the President to impose tariffs." 607 U.S. at 255.

46. Accordingly, the IEEPA Tariff Orders applicable to Plaintiff's entries were issued without statutory authority because IEEPA did not and does not authorize the President to impose the challenged tariffs.

47. Therefore, the IEEPA Tariff Orders and Defendants' resulting assessment, collection, liquidation, retention, and continued administration of IEEPA Duties on Plaintiff's entries are unlawful and *ultra vires*.

48. Plaintiff is entitled to declaratory relief, appropriate liquidation or reliquidation of the affected entries without IEEPA Duties, a refund of all IEEPA Duties paid, any and all available lawful interest, and any further relief necessary to give effect to the Court's judgment.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in its favor and against Defendants, and:

A. Declare that the IEEPA Tariff Orders, as applied to Plaintiff's affected entries, were issued without statutory authority and are unlawful, and that Defendants' assessment and collection of the IEEPA Duties on those entries was unlawful;

B. Order CBP to liquidate each affected entry that remains unliquidated without assessment of IEEPA Duties;

C. Order CBP to reliquidate, or otherwise correct or adjust as authorized by law, each affected entry that was liquidated with IEEPA Duties;

D. Order Defendants to refund all IEEPA Duties collected from Plaintiff;

E. Award Plaintiff any and all applicable interest, including interest under 19 U.S.C. § 1505(c), 28 U.S.C. § 2644, and any pre- and post-judgment interest, as provided by law;

F. Award Plaintiff its costs and any other relief available by law; and

G. Grant such other and further relief as the Court deems just and proper.

Dated: November 18, 2026

Respectfully submitted,

/s/ *Dakota M. Coates*

Meghann C. T. Supino
Dakota M. Coates
Ice Miller LLP
One American Square, Ste. 2900
Indianapolis, IN 46282
317-236-2107
Meghann.Supino@icemiller.com

*Counsel for Plaintiff Jing Mei Automotive (USA), Inc.*